FILED
2019 Oct-11 PM 03:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT 1

**GS ADMINISTRATORS, INC.**
**1345 ENCLAVE PARKWAY**
**HOUSTON, TEXAS 77077**

## AMENDED AND RESTATED GENERAL AGENT AGREEMENT

ACCOUNT # AL 1001

This Amended and Restated General Agent Agreement (the "Agreement") effective as of 6th day of February, 2014, is between GS Administrators, Inc. (the "Company") and the individual(s) and/or entity(ies) indicated on Exhibit "A" (collectively, the "General Agent"). This Agreement amends and restated in its entirety the General Agent Agreement originally entered into by the parties on January 9, 2007.

| GS ADMINISTRATORS, INC. | GENERAL AGENT |
|---|---|
| By: _[signature]_ | By: _[signature]_ (SIGNATURE) |
| Name: Bruce Stricklin | Name: C.O. NORBERG |
| Title: Vice President | Title: President |

Principals of Agency

Signature: _[signature]_
Name: C.O. NORBERG

Signature: _[signature]_
Name: B. BLAKE NORBERG

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is acknowledged, the parties agree as follows:

1. **GENERAL AGENT'S AUTHORITY AND TERRITORY**

The Company hereby appoints General Agent as its nonexclusive representative for the solicitation, installation, and servicing of either (i) automobile dealers ("Dealers") and/or (ii) financial institutions (collectively, the "Accounts") for the sale of the finance and insurance products (each a "Product") listed on the attached product schedules (the "Product Schedules") offered, administered or marketed by the Company or an affiliate of the Company in effect from time to time. The Company shall be permitted to revise Product forms and plans at any time, in accordance with the terms of the applicable agreements between the Account(s) and the Company (the "Account Agreement"). With respect to Dealers, General Agent's authority is limited to the following types of automobile dealers: (i) franchise automobile dealerships other than Toyota and Lexus dealerships, excluding Toyota and Lexus dealerships in the states of Alabama, North Carolina, South Carolina and Georgia and (ii) used car automobile dealerships that have been prior approved by the Company. General Agent shall transact the business for which this appointment is granted through General Agent's duly authorized and trained Sub-Agents (defined in subsection (c) below) and employees. General Agent may offer the Products in the jurisdictions listed on each Product Schedule and the appointment is restricted to the United States. Company or General Agent, upon not less than thirty (30) days advance written notice, may terminate General Agent's right to appoint new Accounts under this Agreement without having to terminate the Agreement in its entirety.

In addition to any other duties, obligations and responsibilities specified in this Agreement, General Agent shall have the following specific duties, obligations, and responsibilities:

(a) <u>Account Appointments and Agreements</u>. General Agent shall submit to the Company for approval and processing all proposed Accounts. The acceptance of any Account shall be within the Company's exclusive discretion. The Company shall be free to terminate an Account at any time in accordance with the provisions of the Account Agreement. General Agent shall be responsible for obtaining an executed Account Agreement from each Account, on a form prescribed by the Company, and such other information and documents required by the Company or when applicable, any insurance company issuing a contractual liability policy to the Account (the "Insurer"). No supplies shall be provided to an Account until such Account has been approved by the Company.

(b) <u>Account Servicing</u>. General Agent shall perform such necessary training, customer service, and administration of the programs offered through the Accounts and accepted by the Company pursuant to this Agreement in accordance with applicable procedures.

(c) <u>Sub-Agents</u>. General Agent may appoint one or more individuals ("Sub-Agents") to assist General Agent in the performance of its duties hereunder. All Sub-Agents shall be approved by the Company in advance of their appointment. General Agent shall be responsible to the Company and shall indemnify the Company for all acts committed by the Sub-Agents.

(d) <u>Provisions of Procedures to Account</u>. The General Agent shall provide Company's applicable policies and procedures relating to the sale or administration of the Products (hereinafter referred to as the "procedures") to each Account who has been accepted by the Company. Company may modify the procedures from time to time. The General Agent shall comply with the provisions of the procedures related to the Products and assure each Account similarly complies therewith.

(e) <u>Communication with and Training Accounts</u>.

(i) The General Agent or the Company (as agreed to by the parties) will provide each Account with current supplies and current rates after such Account has been approved by the Company. The General Agent will forward to such Account information regarding changes in supplies including, but not limited to, applications or changes in rates, Account compensation changes or other regulatory changes related to the Products within thirty (30) days after receipt by General Agent of written notice of such changes from the Company, unless the Company has indicated a shorter implementation period is required by law. If implementation of a change is required in less than thirty (30) days from the date notice is given to the General Agent by the Company, the General Agent will assure Accounts do not act in violation of a required change. Upon termination of General Agent's right to appoint new Accounts, General Agent shall continue to receive forms, applications, brochures, and supplies, but only for purposes of servicing the Accounts appointed by General Agent prior to the effective termination date.

(ii) If the General Agent fails to timely and correctly notify Accounts of changes in supplies or changes in regulatory requirements pursuant to the requirements of section (e)(i) above and the Company incurs a monetary loss as a direct result of such failure, the General Agent will reimburse the Company to the extent of such loss.

(iii) The General Agent will be responsible for training all Accounts with respect to the Products, in accordance with the instructions of the Company and as set forth in the procedures. The General Agent will review all Account practices on a regular basis to assure compliance with the Company's practices and procedures relative to issuance of Products, timeliness for remitting Account costs and fees and timeliness, correctness and completeness of applications and agreements for Products. The General Agent will immediately require any Account that is not abiding by these rules to cease and desist or correct its practices. If an Account is terminated or suspended, the General Agent will immediately re-acquire all supplies which Account may have in its possession and inform Account to cease its sale of the Products.

(iv) The General Agent will be responsible for the supervision of any Sub-Agents and Accounts soliciting the Products.

2. <u>LIMITATIONS OF AUTHORITY</u>

General Agent has no authority to and agrees not to:

(a) Bind the Company by any promise, agreement, expense or liability whatsoever in its name or account, unless approved by the Company in writing;

(b) Pay or allow or offer to pay or allow as an inducement to any Account or Sub-Agent, any rebate of compensation or service fees paid to the General Agent under this Agreement, or any other consideration or inducement other than as specified in the Account Agreement between the Company and Account, or any other compensation unless specifically authorized in writing by the Company to the General Agent;

(c) Represent himself as having any authority other than that set forth herein;

(d) Solicit active Accounts selling Products of the Company or any affiliate of the Company;

(e) Solicit an Account that is doing business with Company or an affiliate of the Company related to another F&I product (other than the Products) to change to another provider for that other F&I product;

(f) Reveal, release or use confidential information related to any person who becomes a customer of the Company;

(g) Make any change or modification to the Company's policies and procedures or to the terms of any Account Agreement or Product;

(h) Negotiate, settle, authorize, or pay claims under the Company's Products; and/or

(i) Deliver to Account any insurance policy related to any Product.

3. <u>REPORTS AND REMITTANCES</u>

All Accounts accepted by the Company pursuant to this Agreement shall report sales conducted by them directly to the Company pursuant to the terms of the Account Agreement. Accounts shall pay the Company for all new business, cancellations and adjustments based on invoices sent by the Company and on the payment terms established by the Company. On or before the twenty-fifth (25th) day of each calendar month, the Company shall report to General Agent all business processed during the preceding month by the Accounts accepted by the Company pursuant to this Agreement. The monthly report shall be accompanied by payment of General Agent's compensation, less compensation refundable by General Agent on account of cancellations, surrenders, or non-payment by an Account and less any other amounts due the Company from General Agent, <u>provided</u>, <u>however</u>, that General Agent shall not receive payment of compensation for (i) business issued or written outside the procedures and guidelines established by the Company or (ii) in the event that this Agreement is terminated by the Company as provided in Sections 9(b)(i) through 9(b)(vi).

4. <u>GENERAL AGENT'S COMPENSATION</u>

(a) As General Agent's full compensation for the business produced by General Agent and all services provided by General Agent, the Company shall pay General Agent the compensation specified in the Product Schedules attached hereto. General Agent is prohibited from receiving, and shall not accept, any compensation from an Account accepted by the Company. General Agent may not assign any compensation accruing under this Agreement, except with the prior written consent of the Company. General Agent's rights to all compensation under this Agreement shall terminate upon the effective date of termination of this Agreement.

(b) If, due to cancellation or for any other reason, refunds are made to the Product contract holder by the Company, General Agent shall refund to the Company a proportionate share of General Agent's compensation attributable to the particular canceled Product. General Agent agrees that any

such refunds of General Agent's compensation shall be deducted from compensation payable as long as this Agreement is in force and, in the event of and notwithstanding termination of this Agreement, the General Agent shall reimburse the Company in full within thirty (30) days after a statement is presented indicating the amount of refund of compensation due on business refunded.

(c) In the event of termination of General Agent's right to appoint new Accounts, as provided in Paragraph 1, General Agent's right to compensation for all Accounts appointed on or before the effective termination date shall continue, provided that, (i) the Product is available for sale by the Account, (ii) the Account continues to sell Products and (iii) the quality and level of service provided by General Agent to the Accounts satisfies Company's procedures and standards for servicing of its Accounts. In the event of (x) the failure of the conditions in this paragraph, (y) a change of control or (z) termination of the Agreement under Paragraph 9(b), the continued compensation provisions of this paragraph will not apply. "Change of control" shall mean the death of or disability of Owner, the failure of Owner to actively participate in the day-to-day business of the General Agent, or a change in ownership of the General Agent. "Owner" shall mean the owner(s) of the General Agent as of the effective date of this Agreement.

5. REPRESENTATIONS, WARRANTIES, AND COVENANTS OF GENERAL AGENT

General Agent makes the following representations, warranties, and covenants to the Company:

(a) License. General Agent and all Sub-Agents shall procure and maintain in good standing all licenses required under applicable law to conduct its activities in connection with the Products and this Agreement.

(b) Laws and Regulations. General Agent and all Sub-Agents shall familiarize themselves with all state laws and regulations applicable to the activities performed by them and shall conduct their activities in compliance therewith. In the event that the Company and/or Insurer is in violation of any statute or regulation due solely to the acts of General Agent or a Sub-Agent or their employees or representatives, the General Agent agrees to defend, indemnify and hold the Company and/or Insurer harmless from all expenses, fines or other fees incurred by the Company and/or Insurer as a result of such violation.

(c) Rules of Company. General Agent and all Sub-Agents shall adhere to all rules, requirements, and procedures of the Company related to the Products, and shall specifically, but without limitation, refrain from extending or waiving any payment terms relating to the Products, guaranteeing any profit returns or dividends to Accounts, or interfering with or modifying, without prior written consent, any determinations made by the Company related to the Products.

(d) Illegal and Unfair Practices. General Agent shall not engage in unlawful discrimination, misrepresentation, or any unfair practice prohibited by applicable law in the conduct of its activities hereunder.

(e) Property and Supplies. General Agent shall maintain in a secure and safe place and, upon request, shall account for all Product forms, applications, brochures, supplies, and other property received from the Company. All such materials are the exclusive property of the Company and General Agent agrees to return all such materials to Company upon demand at any time.

(f) Modification of Forms. General Agent shall not modify, waive, alter, or change, whether orally or in writing, any of the terms of the Company's Product contracts, the Account Agreements or any of the rate sheets or forms supplied by the Company to General Agent.

(g) Expenses and Sub-Agents' and Employee Compensation. General Agent shall not incur any expense on behalf of the Company without the Company's prior written consent. The Company shall not be responsible for any day-to-day agency expenses incurred by the General Agent including, but not limited to rentals, transportation, facilities, the hiring of employees, fees paid to Sub-Agents of the General Agent, postage, advertising, licensing fees, taxes of any kind, or for any other day-to-day agency expense of any kind or description. General Agent shall be responsible for the payment of compensation to all Sub-Agents and employees utilized by General Agent in the performance of this Agreement and shall indemnify and defend the Company from and against any claim for compensation by such persons.

(h) <u>Negotiable Instruments</u>. General Agent shall not negotiate or endorse any check or other negotiable instrument made payable to the Company.

(i) <u>Trust Funds</u>. All Accounts shall remit payment of fees for Products directly to the Company. In the event that General Agent shall receive any funds for or on behalf of the Company, General Agent shall hold in trust and consider as fiduciary such funds, and shall not convert same to its own use nor commingle such funds for personal or other use by General Agent. General Agent shall remit such funds to the Company within two (2) calendar days after receipt by General Agent.

(j) <u>Legal Notices</u>. General Agent shall notify the Company of General Agent's receipt of legal notices or service of process affecting the Company, Insurer or the Products and shall immediately forward same to the Company.

(k) <u>Inducement to Lapse</u>. While this Agreement is in force or at any time thereafter, General Agent shall not induce the lapse, cancellation, or termination of any Product sold by Accounts under this Agreement.

(l) <u>Audit</u>. General Agent shall grant the Company, its representatives, the Insurer or any governmental authority the right of free access during normal business hours at General Agent's business office for the purpose of inspecting the books and records maintained by General Agent with respect to the Products and this Agreement.

### 6. RESPONSIBILITIES OF COMPANY

(a) Render to General Agent the cooperation and assistance reasonably required in order to enable the General Agent to carry out its obligations and undertakings under this Agreement and to enable the General Agent to fulfill the purposes for its appointment as a non-exclusive General Agent.

(b) Furnish General Agent with the Company's applications, rates, rate sheets, procedures and forms for the Products.

(c) When applicable, issue customer contracts upon receipt of applications received from Accounts. All applications are subject to approval by Company. The Company reserves the right to cancel directly any Product at any time, but in the event of such cancellation, the Company shall notify the General Agent of such cancellation.

(d) Prescribe the form, plan, type and character of Products which may be solicited. The Company may from time to time change or discontinue any form, plan, type or character of Product now or hereafter in use.

(e) Deliver on a monthly basis to the General Agent compensation statements, billing statements, experience and production reports in such forms as the Company may determine on business processed during the preceding month.

### 7. ADVERTISING AND INTELLECTUAL PROPERTY

(a) Without the prior written authorization of an officer of the Company, General Agent shall not print, publish, use or authorize, as advertising matter or otherwise, the use of (i) any circular, advertisement or other promotional material, including, but not limited to, communication of information on an internet site, pertaining to the Company, its affiliates, the Insurer, their respective business(es), the Products covered by this Agreement, or (ii) any written or oral communication or publication, including, but not limited to, internet communications, bearing the Company's, its affiliate's, the Insurer or similar name or logo related to the Products. In the event an approved advertisement containing the Company's, Insurer's or the Product names is used by the General Agent or Sub-Agents, the General Agent shall maintain a copy of the advertisement and full details concerning where, when, and how it was used, and shall comply with all legal requirements regarding content, review and approval of advertising and maintenance of records. The General Agent shall be liable for all costs and damages resulting from any unauthorized use of any marketing materials.

(b) Neither party has any right, title or interest in the other's logos, trademarks or service marks, except as stated herein. General Agent acknowledges and agrees that all logos, trademarks or service marks contained on forms, agreements and other materials used in connection with the Products are the property of Company or a licensor of the Company. Neither party will contest the validity of the other's trademarks or service marks. Neither party will use or distribute or market any name or trademarks, logos or service marks of the other, or its affiliates, whether registered or not, in publicity releases, marketing materials advertising or correspondence to any person or consumers or in any manner without the written approval of the other party and, if required by the other party, a properly executed trademark license agreement.

8. <u>INDEMNIFICATION</u>

(a) <u>Indemnification of the Company by General Agent</u>. The General Agent agrees to indemnify, defend and hold harmless the Company, the Insurer, their respective affiliates and subsidiaries and their respective shareholders, officers, directors, employees and representatives from and against any damages, claims, liabilities, judgments, awards, losses, costs, expenses, fines, penalties, including punitive or exemplary damages, and all costs of defense resulting from or arising out of: (1) any act, error or omission, whether intentional or unintentional, by the General Agent or its officers, directors, employees or its Sub-Agents, relating to or arising out of the business covered by this Agreement; (2) any obligation, act or transaction created or performed by the General Agent or its Sub-Agents in violation of, in excess of or in contravention of the power and authority of the General Agent set forth in this Agreement; or (3) any alleged violation by General Agent or any of its officers, directors, employees or Sub-Agents of any law or regulatory requirement related to the Products or this Agreement. The Company will choose defense counsel for all claims or suits described above and defend itself. The General Agent will pay all costs of defense for such claims or suits. The Company will decide, in its sole opinion, whether such claims or suits may be settled.

(b) <u>Indemnification of Agent by the Company</u>. The Company agrees to indemnify, defend and hold harmless the General Agent and its affiliates and their respective officers, directors and employees harmless from and against any and all damages, claims, liabilities, judgments, awards, losses, costs, expenses, fines, penalties, including punitive or exemplary damages, and all costs of defense resulting from or arising out of the gross negligence or willful misconduct of the Company, its employees or authorized representatives relating to benefits provided under the Products. General Agent will choose defense counsel for all claims or suits described herein and will defend itself. The Company will pay all costs of defense for such claims or suits. General Agent will decide, in its sole opinion, whether such claims or suits may be settled.

9. <u>EFFECTIVE DATE AND TERMINATION</u>

(a) This Agreement shall be effective as of the date first written above, and shall remain continuously in effect until terminated by either party upon not less than one hundred twenty (120) days advance written notice, provided that, if applicable law requires the Company to provide a longer notice period, the Company shall give such advance notice within the minimum period required by law.

(b) The Company may terminate this Agreement, effective on the date notice of termination is given, if any one of the following events of default shall occur: (i) the failure of General Agent to remit any monies due, or supplies, or other property belonging to, the Company after the same shall have been demanded in writing by the Company; (ii) if a public authority cancels or declines to renew the General Agent's or any Sub-Agent's license or certificate of authority necessary to conduct activities under this Agreement; (iii) the failure of General Agent to remedy any other material breach of this Agreement by General Agent within thirty (30) days after notice of such breach by the Company; (iv) the filing of a voluntary or involuntary petition in bankruptcy involving General Agent; (v) a general assignment by General Agent of all or substantially all of its assets for the benefit of creditors; (vi) the inability of General Agent to pay its regular trade debts as they become due.

(c) This Agreement may be terminated on a state-by-state basis without affecting the duties and obligations of the parties as to the remaining states.

(d) Upon the termination of this Agreement, General Agent shall cease all activities as a representative of the Company. General Agent shall promptly remit any and all monies on hand due the Company. General Agent shall return to the Company, or store in a safe place for pick-up by the Company, all Product forms, applications, brochures, supplies, and other property furnished by the Company and in General Agent's possession. General Agent shall continue to be liable to the Company for all compensation refunds until all Products sold by Accounts produced by General Agent prior to termination have expired.

10. CONFIDENTIALITY

(a) Each party may have access to information of the other party that is considered confidential or proprietary. A party shall not disclose the other party's Confidential Information to any third party or use the Confidential Information in any manner except for purposes of this Agreement. "Confidential Information", whether in paper or electronic form, shall include but not be limited to,(i) information or data in any form regarding any of the following: a party's, or such party's corporate affiliates' financial condition, information systems, business operations, plans or strategies, products or services, pricing, Nonpublic Personal Information (defined in subsection (e) below), or marketing or distribution plans, methods or techniques; (ii) information that is marked "confidential", "proprietary" or in like words, or that is summarized in writing as being confidential prior to or promptly after disclosure to the other party; and (iii) any and all proprietary designs, ideas, concepts, and technology embodied in (i) and (ii). Under this Agreement, information will be considered Confidential Information if not known by the public generally.

(b) A party may disclose Confidential Information if (i) legally compelled to do so by court or government order or subpoena and (ii) the party gives prompt notice to the other party of any such order or request. These confidentiality provisions do not apply to information that (x) is or becomes generally available or known to the public through no act or omission of the receiving party; (y) was received lawfully from a third party through no breach of any obligation of confidentiality owed to the disclosing party; or (z) created by a party independently of its access to or use of the other party's Confidential Information. Neither party shall be prohibited from disclosing such Confidential Information to its accountants, lawyers, or auditors.

(c) Each party shall maintain commercially reasonable physical electronic and procedural safeguards to protect the security, confidentiality and integrity of Confidential Information. Upon termination of the Agreement, each party shall return (or destroy and certify the proper destruction of) the Confidential Information.

(d) Each party shall not use the other party's Confidential Information for its own or any third party's benefit. General Agent agrees that if it learns details of the Company's or Company's affiliates' Account's or customers through the Confidential Information, General Agent, its Sub-Agents, employees, or other representatives will not use in any manner the Confidential Information to attempt to change any existing or contemplated contractual or business relationship between the Company or Company's affiliates and any such Account or customer.

(e) The parties may disclose to each other information about customers or consumers that may be subject to federal or state laws or regulations, including but not limited to the Gramm-Leach-Bliley Act and its implementing regulations, covering the use, security and disclosure of "nonpublic personal information", as defined under applicable federal or state privacy laws, ("Nonpublic Personal Information"). The parties hereby warrant and represent that they will comply with applicable privacy laws and regulations with respect to the use, disclosure and safeguarding of Nonpublic Personal Information.

(f) Upon reasonable notice, a party may audit or assess compliance with this Article, with the cost of such audit being the sole responsibility of the requesting party. General Agent agrees to make its books, records and facilities available for inspection by government regulators in connection with any

examination or audit by the regulators of Company. Additionally, General Agent agrees to provide information and documentation in a timely manner to Company, and, if requested by Company and at Company's expense, directly to government regulators, as necessary for Company to timely respond to requests for such information or documentation from government regulators.

(g) In the event of the unauthorized use or disclosure of Confidential Information, the disclosing party shall notify the other party immediately and comply with applicable laws in connection therewith. The aggrieved party shall be entitled to all remedies available at law or equity, including injunctive relief.

## 11. ALTERNATIVE DISPUTE RESOLUTION

(a) Company and General Agent acknowledge that disputes involving the performance of this Agreement may from time to time arise. In order to minimize the effects of such disputes on their business relationship, the parties agree that, in all disputes between General Agent on the one hand and Company on the other hand, the parties shall first resort to such Alternative Dispute Resolution programs, including mediation, as may be established by Company.

(b) It is expressly understood that, unless agreed to by both parties at the time of use of such Alternative Dispute Resolution program, the results of any Alternative Dispute Resolution program will not be binding.

(c) The parties' commitment to support and participate in Alternative Dispute Resolution programs specifically is not a waiver of their rights to later resort to litigation before any judicial or administrative forum.

## 12. MISCELLANEOUS

(a) No Waiver. The failure of the Company to insist on the performance of any provision of this Agreement shall not constitute a waiver of the Company's right of redress with respect to such nonperformance or to insist on future performance.

(b) Entire Contract. This Agreement constitutes the entire Agreement between the parties relating to the subject matter hereof and supersedes all prior agreements between the parties. No representations or warranties were made or relied upon by the parties other than as expressly set forth herein.

(c) Headings. The headings in this Agreement are inserted for convenience only and are in no way intended to describe, interpret, define or limit the scope, extent or intent of this Agreement or any provision hereof.

(d) Offset. Any indebtedness obligation of the General Agent to the Company or its affiliates, whether arising under this Agreement, another agreement or otherwise, shall be an offset and/or lien on any compensation or other amounts payable by the Company to General Agent under this Agreement.

(e) Modification. This Agreement and all addenda hereto may not be revised, modified, amended or altered except by written addendum executed by both parties, provided, however, that only the President or a Vice President of the Company has the authority to bind the Company to any such addendum.

(f) Independent Contractor. General Agent and any Sub-Agents shall at all times be considered independent contractors and shall not be considered employees, joint venturers, or partners of the Company.

(g) Governing Law. This Agreement shall be construed in accordance with the laws of the State of Texas, without regard to its choice of law principles.

(h)  Conformity with Law. If any provision of this Agreement is ruled invalid under the laws of any jurisdiction in which business is conducted, this Agreement shall be deemed reformed to the extent necessary to comply with the minimum requirements of such law, but in all other respects this Agreement shall remain valid and enforceable.

(i)  Assignment. This Agreement may not be assigned by General Agent without the Company's prior written consent.

(j)  Delegation by Company. The Company may delegate the performance of all or any portion of its duties and obligations under this Agreement to one or more affiliated or associated companies.

(k)  Joint Liability. Each party executing as General Agent will be jointly and severally liable for the obligations and liabilities hereunder.

(l)  Consent to Suit and Jurisdiction. In the event the Company initiates legal action against General Agent to obtain legal or equitable remedy against General Agent for the breach of this Agreement, General Agent hereby consents to the jurisdiction of any federal or state court within Harris County, Texas, and hereby waives any and all defenses or objections to such legal action based on lack of personal jurisdiction or improper venue.

(m)  No Interpretation Against Drafter. The parties are sophisticated, have been represented by lawyers throughout this transaction and understand the provisions of this Agreement. The parties hereby waive the effects of statutes and doctrines interpreting contracts against the drafter of any clause.

(n)  Survival. Provisions of this Agreement defining the rights, obligations and remedies of the parties as they may be applied in any way to business produced prior to the effective date of termination and to the relationship between the parties in general, including, but not limited to, the confidentiality, indemnification, and dispute resolution provisions and provisions relating to commissions and cancellation refunds, shall remain in effect so long as may reasonably be required to fulfill their purpose following termination of this Agreement.

(o)  Notices. Any and all notices required or permitted to be given under this Agreement shall be in writing and will be deemed given when hand delivered, deposited in the United States Postal Service, Certified Mail, Return Receipt Requested or delivered by overnight courier to the parties address specified below or such other addresses provided by the parties in accordance with this section:

| | |
|---|---|
| If to Company: | GS Administrators, Inc.<br>1345 Enclave Parkway<br>Houston, TX 77077<br>Attn.: President<br>Phone: (713) 580-3171<br>Fax: (713) 580-5171 |
| | cc: Legal Counsel |
| If to General Agent: | At the address shown on Exhibit "A" |

EXHIBIT "A"

| General Agent Name (corporate legal name) | Address | Phone Number Facsimile |
|---|---|---|
| C.D. Norberg & Associates, Inc. | 2534 Woodfern Circle<br>Birmingham, AL 35244 | ~~(800) 239-4700~~<br>(205) 985-8542 |