UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| C.D. NORBERG & ASSOCIATES, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No.: 2:19-cv-1592-AMM |
| GS ADMINISTRATORS, INC., | ) ) ) |
| Defendant. | ) ) |

**ORDER ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

This case is before the court on Plaintiff/Counterclaim Defendant C.D. Norberg & Associates, Inc.'s ("Norberg") Motion For Partial Summary Judgment against Defendant/Counterclaimant GS Administrators, Inc. ("Gulf States"). Doc. 38. For the reasons explained below, the motion is **GRANTED IN PART** and **DENIED IN PART**. Norberg established that it is entitled to summary judgment as to Gulf States' liability for breach of contract, damages for which will be determined later. Norberg failed to establish that it is entitled to summary judgment on Gulf States' counterclaim.

**I. BACKGROUND**

Material facts set forth in the parties' statement of material undisputed facts are deemed admitted for summary judgment purposes unless

controverted by the response or reply of the opposing party. Doc. 33 at 18. For purposes of summary judgment, these are the undisputed material facts:

Gulf States is a seller of extended warranties and similar products for automobiles. Doc. 41-1 at 4.[1] Norberg is an agency that markets finance and insurance products to automobile dealers in Alabama, Tennessee, Mississippi, and Georgia. *Id*. at 5 ¶ 1. Norberg and Gulf States executed an agreement on February 6, 2015 ("the Agreement"), for Norberg to serve as agent for Gulf States. Doc. 39-7; Doc. 41-1 ¶ 12. In relevant part, the Agreement provides:

> [¶ 1] [Gulf States] hereby appoints [Norberg] as its nonexclusive representative for the solicitation, installation, and servicing of either (i) automobile dealers . . . and/or (ii) financial institutions (collectively, the "Accounts") for the sale of the finance and insurance products (each a "Product") listed on the attached product schedules (the "Product Schedules") offered, administered or marketed by [Gulf States] . . . . [Gulf States] or [Norberg], upon not less than thirty (30) days advance written notice, may terminate [Norberg's] right to appoint new Accounts under this Agreement without having to terminate the Agreement in its entirety.
>
> . . .
>
> [¶ 1(b)] <u>Account Servicing</u>. [Norberg] shall perform such necessary training, customer service, and administration of the programs offered through the Accounts and accepted by [Gulf States] pursuant to this Agreement in accordance with applicable procedures.
>
> . . .

---

[1] All citations are to a numbered paragraph or to the page number stamped on the top of the document by the Clerk upon filing, except for citations to deposition testimony, which is to the page and line number of the deposition transcript.

> [¶ 3] <u>Reports and Remittances</u>[.] . . . On or before the twenty-fifth (25th) day of each calendar month, [Gulf States] shall report to [Norberg] all business processed during the preceding month by the Accounts accepted by [Gulf States] pursuant to this Agreement. The monthly report shall be accompanied by payment of [Norberg's] compensation . . . .
>
> [¶ 4] <u>[Norberg's] Compensation</u>[.] . . . As [Norberg's] full compensation for the business produced by [Norberg] and all services provided by [Norberg], [Gulf States] shall pay [Norberg] the compensation specified in the Product Schedules attached hereto. . . . [Norberg's] right to all compensation under this Agreement shall terminate upon the effective date of termination of this Agreement.

Doc. 39-7 (GSA-Norberg 001205-1214).

The Agreement further provides that it "shall be construed in accordance with the laws of the State of Texas," and that "[t]he failure of [Gulf States] to insist on the performance of any provision of this Agreement shall not constitute a waiver of [Gulf States'] right of redress with respect to such nonperformance or to insist on future performance." Doc. 39-7 ¶¶ 12(a), (g).

Norberg recruited two automobile dealerships ("the Champion Dealerships") to contract with Gulf States for the Champion Dealerships to sell Gulf States' products. Doc. 39-3 at 18:9-19:5; Doc. 41-1 ¶¶ 19, 22, 24. The Champion Dealerships are owned by Jeff Hamm. Doc. 47-9 ¶¶ 2-3.

Servicing an Account under the Agreement requires visiting the Account's dealerships. Doc. 47-9 ¶ 4; Doc. 47-2 ¶ 6; Doc. 57-1 at 11 ¶ 4. Prior to September 2018, Norberg visited the Champion Dealerships at least every

3

other month. Doc. 39-1 at 109:17-111:2; Doc. 57-1 at 12 ¶ 6. Since September 2018, Norberg has not visited the Champion Dealerships. Doc. 47-9 ¶¶ 8-9; Doc. 47-2 ¶ 23; Doc. 57-1 at 12-13 ¶ 11; Doc. 61-1 ¶ 11. Since September 2018, Norberg also has not "called Mr. Hamm, . . . monitored the performance of the Champion Dealerships, . . . responded to inquiries from the Champion Dealerships" except for two emails, and "ha[s] not discussed, presented, sold, and/or installed new products being offered" by Gulf States in the Champion Dealerships. Doc. 47-9 ¶¶ 8-9; Doc. 39-1 at 195:4-19; Doc. 57-1 at 12-13 ¶ 11; Doc. 61-1 at 2 ¶ 11.

On July 1, 2019, the Champion Dealerships terminated all relations with Norberg. Doc. 47-9 ¶¶ 10-11; Doc. 47-2 ¶ 22; Doc. 47-8; Doc. 57-1 at 14 ¶ 15; Doc. 61-1 ¶ 15. Eclipse began servicing the Champion Dealerships as a general agent for Gulf States. Doc. 47-9 ¶ 12; Doc. 47-2 ¶ 24; Doc. 39-1 at 212:4-8; Doc. 57-1 at 15 ¶ 17. Gulf States stopped paying Norberg commissions on products sold in the Championship Dealerships starting July 1, 2019. Doc. 39-3 at 129:16-21; Doc. 41-1 ¶ 57. Gulf States "remove[d] [the Champion Dealerships] Accounts from [Norberg's] . . . production reports" and "no longer pay[s] [Norberg] on such accounts." Doc. 1-3 ¶¶ 8-9; Doc. 10 at p. 2 ¶¶ 8-9.

On September 26, 2019, Norberg filed a complaint against Gulf States alleging that the Agreement required Gulf States "to report, on a monthly basis to [Norberg,] all business processed during the preceding month by the Accounts accepted by [Gulf States] pursuant to the Agreement" and "pay[] . . . [Norberg] for earned amounts." Doc. 1-3 at p. 6 ¶ 5. Norberg further alleged that Gulf States "remove[d] two Accounts from [Norberg's] daily production reports," and that Gulf States breached the Agreement "by failing to report to and pay [Norberg] for certain amounts owed." *Id*. at 7 ¶¶ 8, 18. Norberg asserted a claim for breach of contract and requested a declaratory judgment regarding "whether or not [Gulf States] can stop reporting and paying to [Norberg] on the Accounts." *Id*. at 7 ¶ 16.

Gulf States filed an answer and asserted as an affirmative defense that it was excused from paying Norberg commissions "once [Norberg] failed to service the [Champion Dealerships] . . . and/or when the [Champion Dealerships] changed general agents." Doc. 10 at 4 ¶ 2. Gulf States counterclaimed, alleging that Norberg breached the Agreement when it ceased servicing the Champion Dealerships. *Id*. at 9-10. Gulf States alleged that it was entitled to damages in the amount of the "overpayment of commissions" and a judgment declaring that Norberg is not entitled to compensation under

the Agreement because it is not servicing the Champion Dealerships. *Id*. at 10-11.

The Agreement has not been terminated by either party. Doc. 39-3 at 79:16-19; Doc. 47-2 ¶ 8. Norberg still has other active Accounts with Gulf States, is still paid commissions based on those Accounts, and can still solicit new accounts under the Agreement. Doc. 39-3 at 79:16-19; Doc. 47-2 ¶ 8; *see also* Doc. 41-1 ¶¶ 62-63.

Norberg moved for partial summary judgment in its favor "both as to each count of the Complaint, and the Defendant's Counterclaim, leaving open only the amount of damages to be recovered by Norberg." Doc. 38 at 1.

## II. STANDARD OF REVIEW

A party moving for summary judgment must establish "that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it could "affect the outcome" of the case. *Furcron v. Mail Ctrs. Plus*, *LLC*, 843 F.3d 1295, 1303 (11th Cir. 2016) (internal quotation marks omitted). A material fact is in "genuine" dispute if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (internal quotation marks omitted). In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter

but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (internal quotation marks omitted).

## III. ANALYSIS

### A. Norberg's claim against Gulf States

Norberg asserts that Gulf States breached the Agreement when it refused to pay Norberg commissions on the Champion Dealerships accounts after July 2019. Doc. 1-3 at 7 ¶ 18. The Agreement provides (and the parties accept) that Texas law governs construction of the Agreement. Doc. 41-1 at 19 n.5; Doc. 57-1 at 18; *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Cherry, Bekaert & Holland v. Brown*, 582 So. 2d 502, 507 (Ala. 1991).

Under Texas law, "[b]reach of contract requires pleading and proof that (1) a valid contract exists; (2) the plaintiff performed or tendered performance as contractually required; (3) the defendant breached the contract by failing to perform or tender performance as contractually required; and (4) the plaintiff sustained damages due to the breach." *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019).

The parties agree that a valid contract exists, Doc. 41-1 at 19; Doc. 57-1 at 18, so the court analyzes below each of the remaining elements of Norberg's claim for breach of contract.

**1. Norberg's Performance**

To recover damages on a claim for breach of contract, a plaintiff must prove that it performed or tendered performance under the contract. *Pathfinder Oil & Gas, Inc.*, 574 S.W.3d at 890. "[A] party generally cannot recover without showing full performance of [a contract's] provisions on his part." *Benson v. Harrell*, 324 S.W.2d 620, 623 (Tex. App. 1959); *see also Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990). But the general rule has exceptions. A plaintiff may prove that it "substantially complied with its contractual obligations" even if it also breached the contract, or that the defendant "committed [the] first material breach." *STR Constructors, Ltd. v. Newman Tile, Inc.*, 395 S.W.3d 383, 390-91 (Tex. App. 2013) (internal quotation marks omitted). A plaintiff may also prove that it performed under the contract such that any breach was immaterial. *Bartush-Schnitzius Foods Co. v. Cimco Refrigeration, Inc.*, 518 S.W.3d 432, 435-37 & n.5 (Tex. 2017); *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 198 (Tex. 2004). Or a plaintiff may prove that in spite of the plaintiff's material breach, the defendant elected to continue the contract. *Long Trusts v. Griffin*, 222

S.W.3d 412, 415-16 (Tex. 2006); *Hanks v. GAB Bus. Servs., Inc.*, 644 S.W.2d 707, 708 (Tex. 1982); *Compass Bank v. MFP Fin. Servs., Inc.*, 152 S.W.3d 844, 858 (Tex. App. 2005).

The parties do not dispute that Norberg solicited, installed, and (until September 2018) serviced the Champion Dealerships. Doc. 39-3 at 19:2-5; Doc. 41-1 ¶¶ 19, 22, 24, 30-31; Doc. 57-1 at 5 ¶ 30. The parties also do not dispute that since September 2018, Norberg has not visited the Champion Dealerships, "called Mr. Hamm, . . . monitored the performance of the Champion Dealerships, . . . responded to inquiries from the Champion Dealerships" except for two emails, and "ha[s] not discussed, presented, sold, and/or installed new products being offered" by Gulf States in the Champion Dealerships. Doc. 47-9 ¶¶ 8-9; Doc. 39-1 at 195:4-19; Doc. 57-1 at 12-13 ¶ 11; Doc. 61-1 at 2 ¶ 11.

Norberg argues that it performed under the Agreement because the Agreement does not specify an objective standard of customer service that is required and that, in any event, Gulf States never gave Norberg written notice of default under the Agreement. Doc. 41-1 at 20. Because Norberg solicited and installed the Champion Dealerships as an Account with Gulf States and serviced those dealerships at least once a month prior to September 2018, Doc. 39-1 at 109:17-111:2; Doc. 57-1 at 11 ¶ 6, Norberg asserts that it "has

performed," Doc. 41-1 at 19, even if it is no longer fully performing because it is not servicing the Champion Dealerships.

Gulf States asserts that after September 2018, Norberg no longer performed under the Agreement with respect to the Champion Dealerships because it did not service those dealerships. Doc. 57-1 at 27. Gulf States cites the deposition testimony of Norberg's corporate representative, who testified that Norberg is "not servicing" the Champion Dealership accounts. Doc. 48-3 at 210:2-5. This undisputed evidence means that Norberg cannot establish its complete performance, so under the general rule, Norberg is not entitled to recover under the contract.

Nevertheless, under Texas law, Norberg may recover if it establishes that it substantially complied with its contractual obligations, that its breach was immaterial, or that Gulf States elected to continue the contract in spite of Norberg's defects in performance. *STR Constructors, Ltd.*, 395 S.W.3d at 390-91; *Mustang Pipeline Co.*, 134 S.W.3d at 198; *Hanks*, 644 S.W.2d at 708. "A material breach is conduct that deprives the injured party of the benefit that it reasonably could have anticipated from the breaching party's full performance." *Earth Power A/C & Heat, Inc. v. Page*, 604 S.W.3d 519, 524 (Tex. App. 2020). "Generally, materiality [of a breach] is an issue to be determined by the trier of facts" using a multifactor balancing test. *Bartush-*

*Schnitzius Foods Co.*, 518 S.W.3d at 436-37; Restatement (Second) of Contracts § 241 (Am. L. Inst. 1981).

Norberg argues first that as a matter of law its breach was immaterial. Doc. 41-1 at 23. But materiality is ordinarily a question for the jury, and Norberg does not explain why this case presents an exception. A reasonable jury could find that servicing of the Champion Dealerships was a benefit that Gulf States reasonably could have anticipated from Norberg's full performance, and that Gulf States has been deprived of that benefit.

Norberg also argues that Gulf States elected to continue the contract despite any defects in Norberg's performance. Doc. 41-1 at 22 ("[U]ntil termination, Norberg is entitled to commissions" under the Agreement). "It is a fundamental proposition of contract law that when one party breaches its contract, the other party is put to an election of continuing or ceasing performance, [and] any action indicating an intention to continue will operate as a conclusive choice, not depriving the injured party of his cause of action for the breach which has already taken place, [but] depriving him only of any excuse for ceasing performance on his own part." *Compass Bank*, 152 S.W.3d at 858 (internal quotation marks omitted). "A party who elects to treat a contract as continuing deprives himself of any excuse for ceasing performance on his own part." *Hanks*, 644 S.W.2d at 708.

In *Hanks*, a business owner agreed to sell his business to, and not compete with, a corporation; the corporation agreed to pay the purchase price in installments. *Id*. at 707. After the transfer of the business's assets, the owner breached the agreement by competing with the corporation. *Id*. The corporation sued to enforce the agreement, and while the suit was pending, the corporation refused to pay the final installment. *Id*. at 708. The owner counterclaimed for payment of the final installment, and the corporation argued that it was not liable because of the owner's prior breach. *Id*. "At all times during the dispute and subsequent litigation," the corporation "chose to treat the contract as continuing" and to receive the benefits that flowed from the sale of the business. *Id*. The corporation "did not pursue its excuse remedy until after it had already instituted action to enforce the contract, well over a year after [the business owner's] breach." *Id.* The Supreme Court of Texas held that "[b]ecause [the corporation] retained the assets of the business and chose to treat the contract as continuing, it could not elect the excuse remedy prior to judgment." *Id*. at 709.

According to Gulf States, "the parties agree that the . . . Agreement has not been terminated by either party" following Norberg's breach. Doc. 57-1 at 32-33. Instead, after Norberg sued for breach of contract, Gulf States counterclaimed for damages and sought a declaratory judgment that it is not

12

obligated to perform its duty to pay certain commissions to Norberg. Doc. 10 at 10-11.

Under *Hanks*, Norberg's incomplete performance satisfies the second element of its breach of contract claim because it is undisputed that Gulf States elected to continue the Agreement despite any defects in Norberg's performance. Accordingly, Norberg has established the second element of a claim for breach of contract.

**2. Gulf States' Breach**

Norberg asserts that Gulf States breached the Agreement when it refused to pay Norberg commissions on the Champion Dealerships account after July 2019. Doc. 1-3 at 7 ¶ 18; Doc. 41-1 at 23. Gulf States does not dispute that it refused to pay Norberg these commissions and argues that its refusal was not a breach of the Agreement because Norberg is not entitled to the commissions. Doc. 57-1 at 25.

The "Compensation" clause of the Agreement provides: "As [Norberg's] full compensation for the business produced by [Norberg] and all services provided by [Norberg], [Gulf States] shall pay [Norberg] the compensation specified in the Product Schedules." Doc. 39-7 ¶ 4. Gulf States asserts that its duty to pay Norberg compensation is conditioned on Norberg's provision of services, so if Norberg was not servicing the Accounts, then Gulf

States had no duty to pay Norberg commissions. Doc. 57-1 at 22-26 (citing Doc. 48-1 ¶ 4). Although Gulf States does not use the words "condition precedent," the substance of Gulf States' argument is that the "Compensation" clause sets forth a condition precedent to Gulf States' duty to pay commissions.

"A condition precedent is an event that must happen or be performed before a right can accrue to enforce an obligation." *Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 108 (Tex. 2010) (internal quotation marks omitted) (citing, *inter alia*, Restatement (Second) of Contracts §§ 224, 225 (Am. L. Inst. 1981)). "A covenant, as distinguished from a condition precedent, is an agreement to act or refrain from acting in a certain way." *Solar Applications Eng'g, Inc.*, 327 S.W.3d at 108. When a provision does not use language typical of conditions, "such as 'if', 'provided that', [or] 'on condition that,' . . . and another reasonable interpretation of the contract is possible, the terms will be construed as a covenant." *Id.* at 109 (internal citation and quotation marks omitted). Prior "[b]reach of a covenant may give rise to a cause of action for damages, but does not affect the enforceability" of a contract that the parties have elected to continue. *Id.*; *Hanks*, 644 S.W.2d at 708.

The "Compensation" clause of the Agreement does not use conditional language: rather, it specifies that "[a]s" compensation, Gulf States "shall pay" Norberg based on commissions. Doc. 48-45 ¶ 4. Because it is reasonable to interpret that provision as a covenant by Gulf States to pay Norberg, the provision must be construed as a covenant, not a condition precedent. *Solar Applications Eng'g, Inc.*, 327 S.W.3d at 109. Accordingly, Norberg's failure to service the Champion Dealerships was not the nonoccurrence of a condition precedent, and Gulf States' subsequent failure to perform was a breach of the Agreement that it elected to continue.

### 3. Damages

Norberg's motion for summary judgment is partial because it "leav[es] open . . . the amount of damages to be recovered." Doc. 38 at 1. Norberg asserts that it suffered damages when Gulf States stopped paying its commissions and that the amount of damages is controlled by the payment schedule of the Agreement, plus attorney's fees. Doc. 41-1 at 27.

Gulf States does not dispute that Norberg suffered damages, but asserts that those damages are too speculative to be recoverable because Norberg has no proof that the Champion Dealerships would have generated any sales for Gulf States had Norberg continued to service the account. Doc. 57-1 at 34.

Gulf States' argument is nonresponsive to Norberg's uncontested assertion that it suffered damages. If Gulf States' argument is relevant, it goes to the amount of damages that Noberg may recover, which is expressly not the subject of Norberg's motion for partial summary judgment. Accordingly, for purposes of Norberg's motion, the court finds that there is no genuine issue of material fact that Norberg suffered damages.

For the foregoing reasons, Norberg has established that it is entitled to summary judgment as to Gulf States' liability for breach of contract.

**B. Gulf States' Counterclaim Against Norberg**

Gulf States alleges in its counterclaim for breach of contract that Norberg breached Paragraph 1 of the Agreement when, "[s]tarting in 2018," Norberg stopped servicing the Champion Dealerships. Doc. 10 at 9 ¶¶ 23-24. Gulf States alleges that as a result of this breach, it was required to "intervene[] and directly service[]" the Champion Dealerships and eventually find a new agent to maintain the Champion Dealerships as an account. *Id*. at 8-9 ¶¶ 13, 19-21. Gulf States seeks to recover the commissions it paid to Norberg from January 2018 through June 2019, plus "other and different relief to which it might be entitled." Doc. 10 at 10-11.

Norberg makes five arguments in support of its motion for summary judgment on Gulf States' counterclaim. The court addresses each in turn.

*First*, Norberg asserts that the relief Gulf States seeks (which Norberg calls a "'refund' (i.e., restitution) of all commissions paid to Norberg" from January 2018 through June 2019) is not an available remedy under Texas law in an action for breach of contract because "the correct measure of damages [is] the difference in profit to [Gulf States] if Norberg had performed." Doc. 41-1 at 30. This argument is not a basis to grant summary judgment to Norberg. Even if Norberg is correct (the court expresses no view), the argument merely limits Gulf States' recoverable damages, not Norberg's liability.

*Second*, Norberg asserts that because Gulf States seeks a form of relief that should be considered "equitable in nature," its claim is "in truth a claim for unjust enrichment" and is barred by the voluntary payment rule. Doc. 41-1 at 29-31. But under Texas law, the voluntary payment rule is not a defense to a claim for breach of contract: "[T]o the extent the subject matter of [a plaintiff's] claims is covered by the parties' contract, the [voluntary-payment] rule [does] not apply." *BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 775 (Tex. 2005). Accordingly, Norberg's argument that it is entitled to summary judgment because Gulf States' counterclaim is barred by the voluntary payment rule fails.

*Third*, Norberg asserts that Gulf States has not established the second element of a claim for breach of contract because Gulf States breached the Agreement when it failed to pay Norberg's commissions. As previously discussed with respect to Norberg's motion as to its own claim, *supra* pp. 11-13, because the parties elected to continue the Agreement, this argument fails.

*Fourth*, Norberg asserts that it did not breach the Agreement because Gulf States "has never treated Norberg as if it were in breach of the Amended Agreement." Doc. 41-1 at 34. This assertion fails for two separate and independent factual reasons: (1) there is no dispute that Gulf States stopped paying commissions after July 2019; and (2) Norberg conceded both that servicing an Account consists of visiting the dealership, and that it has not visited the Champion Dealerships since September 2018. Doc. 57-1 at p. 10 ¶ 4, pp. 12-13 ¶ 11; Doc. 61-1 ¶ 11.

*Fifth*, Norberg asserts that summary judgment on Gulf States' counterclaim is proper because the termination provision in Paragraph 1 is the exclusive remedy for a breach of the Agreement. Doc. 41-1 at 35-36. That provision states: "[Gulf States] or [Norberg], upon not less than thirty (30) days advance written notice, may terminate [Norberg's] right to appoint new

Accounts under this Agreement without having to terminate the Agreement in its entirety." Doc. 39-7 ¶ 1.

Under Texas law, "upon breach of contract, a party may pursue any remedy which the law affords in addition to the remedy provided in the contract." *Blackstone Med., Inc. v. Phoenix Surgicals, LLC*, 470 S.W.3d 636, 653 (Tex. App. 2015). "The mere fact that the contract provides a party with a particular remedy does not . . . mean that such remedy is exclusive," and "[a] construction which renders the specified remedy exclusive should not be made unless the intent of the parties that it be exclusive is clearly indicated or declared." *Vandergriff Chevrolet Co. v. F. Bank*, 613 S.W.2d 68, 70 (Tex. App. 1981) (internal citation omitted).

The termination option in the Agreement does not enumerate Gulf States' remedies upon Norberg's breach of the Agreement, let alone "clearly indicate[]" that it sets forth the only remedies Gulf States may pursue upon breach. *Vandergriff Chevrolet Co.*, 613 S.W.2d at 70. Accordingly, the termination option does not preclude Gulf States from asserting a claim for damages against Norberg.

For the foregoing reasons, Norberg motion for summary judgment against Gulf States' counterclaim is **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, Norberg's motion for partial summary judgment is **GRANTED IN PART** and **DENIED IN PART**.

**DONE** and **ORDERED** this 28th day of September, 2021.

_____
**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE